[No. 19571. Department One. March 29, 1926.]

M. SANDO *et al., Respondents,* v. F. O. KALBERG *et al.,
Appellants.*[1]

[1] CONTRACTS (145, 150)— PERFORMANCE OF EXTRA WORK — AGREE-
MENT BY ARCHITECTS—ACCEPTANCE OF PERFORMANCE. Owners can
not complain that the architects' agreement to allow, as an ex-
tra, for concrete work in addition to that shown by the drawings,
if necessary to carry the footings down to solid bearings as re-
quired by the contract, where they referred the contractor to
the architects to negotiate the contract, the agreement for the
extra was made before the contract was signed, and was ratified
by acquiescence in payments as the work progressed.

Appeal from a judgment of the superior court for
King county, Truax, J., entered July 8, 1925, upon
findings in favor of the plaintiff, in an action on con-
tract, tried to the court. Affirmed.

*Howard O. Durk,* for appellants.

*Robert A. Devers,* for respondents.

TOLMAN, C. J.—This is an action to foreclose a lien
for labor and material furnished under a contract for
the construction of a building. The plaintiffs had
judgment below for $619.60, interest and costs, and the
defendants have appealed.

The agreement between the parties consists of three
documents, i. e., the building contract, the drawings
and the specifications, and the amount recovered was
allowed as an extra.

In brief, it is appellants' contention that the draw-
ings, which state the exact depth of the excavations
to be made for the column footings, are controlled by
the provisions of the contract and specifications, which
require the footings to be carried down to solid bear-
ings, and though it was necessary to place the footings

[1]Reported in 244 Pac. 576.

at a much greater depth than that named in the drawings, still that work was required under the contract, read as a whole, and should not have been allowed as an extra under authority of *Wade v. Tacoma,* 131 Wash. 245, 230 Pac. 99, and other like cases. The rule announced in the *Wade* case is sound and we fully adhere to it, but in this record we find a state of facts which makes that rule inapplicable.

It appears that, before the contract was let, respondents were engaged to do certain grading and preliminary work, with the understanding that if they did not secure the building contract they would be paid for such work. Thereafter, when respondents went to the appellants to secure the contract, they were directed to go to a firm of architects—who had been employed by appellants to prepare the necessary drawings, plans and papers and to let the contract—and told to negotiate with them for the purpose of securing the contract. Then and there the respondents discovered the possibility of conflict between the drawings and the specifications, and refused to enter into the contract as prepared, unless assured that, if the footings had to be of a greater depth than that shown on the drawings, they would be paid for the additional labor and material as an extra under the contract. Thereupon the architects wrote and delivered to respondents the following letter:

"Stuart & Wheatley
Architects
426-427 Walker Building
Seattle          Oct. 1st, 1923
"Messrs. Sylliaasen & Sando
"Dear Sirs:

"It is understood that if more concrete is needed than shown on the plans of Mr. Kalberg's building:—concrete necessary in foundation walls so that they are down to satisfactory bearing same will be considered

an extra, should less concrete be used than shown owner is to get credit for same. Cost of this extra concrete to be figured at the rate of nine dollars per yard for concrete and 15c per surface foot for form work.                        Yours truly,

"B. Dudley Stuart
for Stuart & Wheatley

"P. S.    The extra would also cover any extra work necessary.                        B. D. S."

With that assurance, respondents signed the contract and entered upon the work. It is true that appellant Kalberg testified that he had not authorized the writing of this letter and knew nothing of it until long afterwards—he not being present when respondents signed the contract—but bills for the extra foundation work were allowed by the architects, as the work progressed, and eighty-five per cent thereof was paid from time to time with the estimates under the contract, and without protest until the time for final settlement arrived.

[1] It is urged that, under the terms of the building contract, the architects had no authority to make any such change therein, and various provisions of the contract are pointed out which define and limit the powers and duties of the architects; but the contract cannot govern upon this matter, because the so-called change or modification was made before the contract was executed or took effect, and at that time the architects were acting as the general agents of the appellants to let the contract, with power to bind their principals to the extent of their apparent authority. Appellants, having themselves directed the respondents to go to the architects for the purpose of negotiating a contract, and having then placed no limitations upon the powers of the architects, are not now in a position to urge that anything found necessary to be

done to the end that the contract be let, was beyond the apparent scope of the authority of the architects. Furthermore, the failure to object promptly, and the payment of eighty-five per cent of the amount of such extras as the work progressed, was a sufficient ratification to bind the appellants.

Error is assigned upon the admission in evidence of Exhibit C, the letter which we have quoted, but what we have already said disposes of that question.

Error is also predicated upon the denial of appellants' counterclaim for damages caused by delay in completing the building. The questions thus raised are of fact only, and after a careful study of the evidence we find nothing which will warrant our disturbing the results reached by the trial court.

The judgment appealed from is affirmed.

MAIN, MITCHELL, and FULLERTON, JJ., concur.

HOLCOMB, J. (concurring)—While I cannot give assent to what is said reaffirming *Wade v. Tacoma, supra,* I fully concur in the result herein.